569 P.2d 303

**STATE of Arizona, Appellee,**

v.

**Ewell "Nick" DENNY, Appellant.**

**No. 1 CA–CR 1660.**

Court of Appeals of Arizona,
Division 1,
Department A.

Sept. 2, 1977.

---

362

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Galen H. Wilkes, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne W. Kappes, Deputy Public Defender, Phoenix, for appellant.

## OPINION

FROEB, Chief Judge.

We are required to determine in this criminal appeal whether the removal of encumbered property from a restaurant subjected appellant to the criminal sanctions of A.R.S. § 44–1219.

Appellant owned two-thirds of the stock of three Arizona corporations which in turn owned and operated three restaurants: namely, Neptune's Table, Neptune's Fish and Chowder and Neptune's East.

In December 1974, appellant removed certain wall decorations from Neptune's Table in Phoenix, Arizona, and took them to Torrance, California, where they were installed in another restaurant in which appellant had an interest.

Appellant was charged with a violation of A.R.S. § 44–1219, the pertinent part of which reads:

A. It is unlawful for a person who has mortgaged personal property to another, or who has possession of personal property under a contract of sale whereby the vendor retains title, to:

1. During the existence of the mortgage or contract, and without first obtaining the written consent of the mortgagee or vendor or their assignees, sell, transfer or in any manner encumber such property without first fully advising the person to whom the sale, transfer or encumbrance is to be made, of the facts of the prior mortgage or contract of sale.

2. Conceal, take, drive or otherwise dispose of or destroy any of the encumbered property contrary to the provisions of the mortgage or contract.

3. Remove the property or any part thereof from the county where the property was located when the contract or mortgage was made if the property is other than an automobile, and if an automobile, to remove the automobile from the state.

A jury trial resulted in conviction and appellant was placed on probation for five years, and fined $1000.

Appellant cites eight grounds on appeal for reversal which we summarize as follows:

(1) Does the indictment allege a public offense?

(2) Was prosecution of appellant under A.R.S. § 44–1219 arbitrary and discriminatory in violation of due process and equal protection of the law under the fifth and fourteenth amendments?

(3) Does A.R.S. § 44–1219 impose criminal sanctions against a transferee of the mortgagor?

(4) Does the evidence support a finding that appellant was a transferee of the mortgagor?

(5) Is A.R.S. § 44–1219 unconstitutionally vague and ambiguous?

(6) Has A.R.S. § 44–1219 been repealed by implication by the Uniform Commercial Code?

(7) Assuming A.R.S. § 44–1219 is constitutional and has not been repealed, is it limited to transactions contemplated at the time of its passage or does it include transactions under the Uniform Commercial Code?

(8) Is the security instrument relied upon as a basis for the charge of removing encumbered property valid when it was given by the corporation to secure the personal obligations of stockholders?

As we hereafter explain, the conviction must be reversed on the basis of the third cited ground and as a consequence we make only passing reference to the others.

We turn then to the details of the underlying commercial transactions. In May 1970, O. A. Helsing, Harold Kennedy and Robert L. Martiny and their wives sold all of the issued and outstanding stock of three Arizona corporations to John Greer, Harvey McElhannon and Charles G. Harris and their wives. The corporations owned and operated restaurants known as Neptune's Table, Neptune's Fish and Chowder and Neptune's East. The corporations held leases on the real property on which the restaurants were located, owned all person-

al property being used, as well as liquor licenses and good will. The purchase price, after cash down payment, was to be paid in monthly installments, plus interest, represented by a promissory note in the amount of $700,000 executed by Greer, McElhannon and Harris. Although the sellers retained a lien on the shares of stock to secure the purchase price, the buyers gave additional security to the sellers by causing the corporations to execute a chattel security agreement on "all fixtures, equipment and other personal property" located at the three restaurants.

In 1973, Harris sold his one-third interest in the stock of the three corporations to Greer.

In 1974, Greer sold his two-thirds interest in the stock to appellant, who agreed to assume all of the obligations of the May 20, 1970 agreement between Helsing, Kennedy and Martiny, the original sellers, and Greer, McElhannon and Harris, the original buyers.

Later, in December 1974, appellant arranged to have certain wall decorations, consisting of mounted fish, removed from Neptune's Table restaurant and taken to Neptune's East restaurant in Torrance, California. There was evidence that appellant was aware of the fact that the property belonged to one of the corporations and was encumbered by the chattel security agreement. Neither Helsing, Kennedy nor Martiny gave appellant permission to remove the decorations.

The chattel security agreement by which the wall decorations were encumbered is dated December 15, 1970, and thus came into existence after the adoption of the Uniform Commercial Code in Arizona, which was January 1, 1968. In accordance with the provisions of the Uniform Commercial Code, the agreement granted a security interest in itemized property. It was neither a chattel mortgage nor a conditional sales contract.

Appellant contends in his third issue for review that the criminal sanctions of A.R.S. § 44-1219 quoted earlier do not ap-ply to him because his legal relationship to the removed property is that of a stockholder in a corporation which owned and encumbered property. He argues that he is neither "a person who has mortgaged personal property to another," nor one "who has possession of personal property under a contract of sale whereby the vendor retains title." We agree that the facts of the case do not bring appellant within the prohibitions of A.R.S. § 44-1219 and that for this reason the conviction is reversed and the indictment dismissed.

Scrutinizing the first paragraph of A.R.S. § 44-1219, the first category mentioned pertains to mortgagors of personal property, referring obviously to the pre commercial code security device known as a chattel mortgage. Even if we were to say that the legal relationships created by the chattel security instrument in the present case are roughly analogous to those under a chattel mortgage, i. e., the owner of the property retains title but grants a lien thereon to secure the underlying debt, appellant is not within its scope because he is not the person who created the lien or, as the statute recites, "mortgaged" the property. Instead, the corporation undertook this action prior to the time appellant became a stockholder. Thus he is not even the transferee of a "person who has mortgaged personal property." He is the transferee of a person who owned shares of stock in a corporation which "has mortgaged personal property to another." This is too far removed from the express relationship described in the statute.

By the same token, appellant is not one "who has possession of personal property under a contract of sale whereby the vendor retains title." As is already clear, appellant did not have "possession" of the property— the corporation did. Moreover, the vendor did not retain title to the property at any time here. The original sale in this case involved a transfer of corporate stock from one group to another, with a requirement that the corporation encumber the personal property to secure the purchase price of the stock. The original sellers of the corporate stock did not have title to the property—the

corporation did. Thus they were not "vendors" of the property. In any event, the encumbrance by the corporation of its property to the original sellers of the stock was not a transaction in which title was "retained" by the sellers. It is quite clear that the corporation had title to the property and after it was encumbered by the chattel security instrument, it still had title.

■ A.R.S. § 1–211 declares the legislative intent that penal statutes in Arizona be construed according to the "fair import of their terms, with a view to effect their object and to promote justice." Even though A.R.S. § 1–211 rejects the common law rule of strict construction of penal statutes, where a criminal statute bases criminal conduct upon a specific legal relationship, such as A.R.S. § 44–1219, it is necessary for the State to show that the defendant comes within that relationship or category before criminal sanctions may be imposed. Moreover, A.R.S. § 1–213 sets forth an additional rule of statutory construction which states that "Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." This has relevance here inasmuch as A.R.S. § 44–1219 establishes criminal sanctions in the field of commercial law and necessarily uses language which has acquired "a peculiar and appropriate meaning in the law."

■ We conclude, therefore, that appellant did not have the necessary legal and commercial relationship to the removed wall decorations to bring him within A.R.S. § 44–1219. We will not extend a statute to include matters not within its express provisions. *City of Phoenix v. Donofrio*, 99 Ariz. 130, 407 P.2d 91 (1965); *Town of Scottsdale v. State*, 98 Ariz. 382, 405 P.2d 871 (1965).

■ In view of the fact that A.R.S. § 44–1219 has been little used in Arizona and has been the subject of appellate consideration in only three instances,[1] we turn to other issues raised by appellant. As to the first (whether the indictment alleged a public offense) it is clear from the foregoing discussion that it did not since it did not allege any criminal conduct. The second issue (whether prosecution of appellant was arbitrary and discriminatory in violation of due process and equal protection under the fifth and fourteenth amendments) fails at the threshold because the record is devoid of evidence concerning the enforcement or lack of enforcement of A.R.S. § 44–1219. The third issue (whether the statute includes transferees of the mortgagor) has already been addressed, and the fourth issue (whether appellant was in fact a transferee of the mortgagor) has been shown to be irrelevant, although it is clear appellant was not such a transferee. The fifth question (whether A.R.S. § 44–1219 is unconstitutionally vague and too ambiguous to be enforceable) can be answered in the negative as the statute is, contrary to appellant's argument, quite clear and specific, particularly so, as we have construed it. The question overlaps, however, with the sixth issue (whether A.R.S. § 44–1219 has been repealed by implication by reason of the Uniform Commercial Code). Repeal by implication of one statute by another is not favored unless it is clear from the inherent inconsistency of the juxtaposed statutes that the legislature intended repeal. *Rehurek v. Welcome*, 26 Ariz.App. 534, 549 P.2d 1052 (1976); *State v. Ulmer*, 21 Ariz.App. 378, 519 P.2d 867 (1974). See *State ex rel. Larson v. Farley*, 106 Ariz. 119, 471 P.2d 731 (1970) citing *City of Mesa v. Salt River Project Agr. Imp. & P. Dist.*, 92 Ariz. 91, 373 P.2d 722 (1962). Our attention is not drawn to any provision of the commercial code which conflicts with A.R.S. § 44–1219. The argument is made that the substitution of the concept of a "security interest" for such security devices as chattel mortgages and conditional sales contracts renders A.R.S. § 44–1219 inapplicable to secured transactions under the commercial code. In the first place, the mere use of a chattel mortgage or a conditional sales contract

---

1. *State v. Sparks*, 97 Ariz. 358, 400 P.2d 586 (1965); *Meason v. Ralston Purina Co.*, 56 Ariz. 291, 107 P.2d 224 (1940); *Smith v. State*, 37 Ariz. 262, 293 P. 23 (1930).

after the effective date of the commercial code will not defeat a security interest otherwise valid under its provisions. See A.R.S. § 44–3102. Although it would be appropriate, and indeed desirable, for the legislature to amend A.R.S. § 44–1219 so that it would coincide with the commercial code, we cannot say that a secured transaction under the commercial code involving a chattel security instrument would not under any circumstances validly invoke the criminal sanctions of A.R.S. § 44–1219. We leave the determination of this to a specific case involving the question, but note in passing that with such a case we would of necessity need to look more closely at the fifth issue raised here by appellant, namely, whether the statute in such circumstances is too vague and ambiguous to be enforceable. Finally, appellant's seventh question (whether A.R.S. § 44–1219 can include transactions under the commercial code) has already been addressed and the eighth issue (whether the chattel security instrument involved here is valid in view of the fact that it was granted by the corporation to secure the personal obligations of its stockholders) involves a collateral attack upon the security device which would be inappropriately resolved in this criminal proceeding and is a doubtful defense to the crime charged.

In accordance with the foregoing, the judgment and conviction is reversed and the indictment is dismissed.

NELSON, P. J., and HAIRE, J., concur.