13 P.3d 1200

**STATE of Arizona, Appellee,**

v.

**Scott Aaron KESSLER, Appellant.**

**No. 1 CA–CR 99–0988.**

Court of Appeals of Arizona, Division 1, Department E.

Nov. 14, 2000.

Janet A. Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Robert A. Walsh, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Richard D. Engler, Yuma, Attorney for Appellant.

## OPINION

EHRLICH, Judge.

¶1 Scott Aaron Kessler appeals from the trial court's order revoking his probation due to his violation of one of its terms. He specifically challenges the constitutionality of the condition that he have "no contact with any child" as is imposed upon participants in Yuma County's Sex Offender Supervision Program. Finding no merit in his contentions, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2 Kessler was indicted in September 1997 for sexual abuse arising from an incident in which he rubbed the breasts of a thirteen-year-old girl. A few months later, he pled guilty to aggravated assault, a class 6 felony. The trial court suspended the imposition of sentence and placed Kessler on supervised probation for a period of 36 months.

¶3 A special condition of Kessler's probation was that he "[a]bide by all written sex offender regulations of probation imposed by [his] probation officer," including Regulation Number 1 of Yuma County's "Special Regulations of Probation for Sex Offenders." Regulation Number 1 in part provides that a probationer "[n]ot initiate, establish, or maintain contact whatsoever with any child (under the age of 18) nor attempt to do so ... except under circumstances approved in advance and in writing by the probation officer."

¶4 A document entitled "Definition of Terms Regarding Contact With Minors" ("Definitions") supplements Regulation Number 1 by providing a more detailed explanation of the types of conduct prohibited by the regulation.[1] According to the Definitions, Regulation Number 1 proscribes any form of direct, indirect or proximate contact, whether in a public or non-public area, regardless whether the minor is known to the probationer, unless the probationer is supervised or chaperoned. The Definitions further provide detailed explanations of the various types of "contact," the necessary qualifications of a "supervisor/chaperone" and examples of prohibited contact in public and non-public areas.

¶5 In early September 1999, Kessler requested permission from his probation officer, Cathy Dryer, to attend a Labor Day weekend church retreat in California. Kessler told Dryer that he would be riding to California with a father and son, ages 51 and 31, and that he would be camping with these two men during the retreat. Dryer contacted the associate pastor of Kessler's church to explain the circumstances of Kessler's probation and to determine whether, in light of that information, the pastor was comfortable with having Kessler attend the retreat. Dryer's conversation with the pastor left her with the impression that the pastor would be attending the retreat and that he would act as "somewhat of a chaperone" for Kessler.[2] Accordingly, Dryer gave Kessler permission to attend the retreat "provided that he not be around children." She specifically instructed him that, if children were present at the retreat, he was not to play with them, sit with them or speak with them.

¶6 When Kessler returned from the retreat, he told Dryer that "everything went fine." The next day, however, Dryer received a telephone call from the pastor, who informed her that he had not attended the retreat and that he had learned that Kessler had driven to California with a married couple and their three minor children. The pastor also reported that, contrary to Kessler's claim that he would be camping with a man and his adult son, Kessler had in fact shared a tent with a man and his thirteen-year-old son. The pastor further advised Dryer that Kessler had been observed during the retreat pushing children on a swing set outside the presence of other adults.

¶7 When confronted by Dryer, Kessler admitted the truth of the pastor's allegations. He also told her that, while on the retreat, he had seen a group of approximately five children "wandering around the public restroom" without adult supervision, that he had

---

1. A copy of the "Definition of Terms Regarding Contact With Minors" is attached to this opinion as Appendix A.

2. The pastor did not, however, meet the necessary qualifications for a chaperone in Yuma County's Sex Offender Supervision Program.

decided to act as the children's "protector," supervising them for approximately fifteen minutes.

¶ 8 Kessler further admitted to Dryer that a young boy, who was not affiliated with the church group, had approached him and eventually asked him to meet his father. Agreeing, Kessler accompanied the boy to the boy's campsite, where the boy's father told Kessler to stay away from that father's children.

¶ 9 Relying on the information that she received from the pastor and from Kessler, Dryer filed a petition to revoke Kessler's probation for a violation of Regulation Number 1. She alleged that, during the Labor Day weekend retreat, Kessler had "initiated, established, and maintained contact with minors." [3]

¶ 10 At the hearing on the petition to revoke probation, Kessler did not attempt to refute the State's allegations regarding his contact with children during the retreat. Rather, he contested the petition on the basis that Regulation Number 1 and the Definitions were unenforceable because they unjustly prohibited his "innocent physical presence" among minors and thereby violated his constitutional rights, including his right to the free exercise of his religion. He argued in the alternative that any violation of the terms of his probation during the Labor Day weekend fell under a "good faith exception" because he had obtained his probation officer's permission to attend the retreat.

¶ 11 The trial court found that Kessler had violated the terms of his probation. It once again suspended the imposition of sentence, placed Kessler on Intensive Probation and extended his probationary period by 55 days. Kessler appealed.

## DISCUSSION

¶ 12 Kessler presents three arguments on appeal. First, he contends that Regulation Number 1 and the Definitions are so broadly written as to necessarily prohibit him from engaging in constitutionally protected activity, including the free exercise of his religion and his freedom of association. Second, he argues that Regulation Number 1 and the Definitions are "so overreaching" in their scope that they necessarily result in selective enforcement by the State. Third, he insists that it is fundamentally unfair to conclude that he violated the terms of his probation because his probation officer had granted him permission to attend the retreat. We reject each of these arguments.

### A. Overbreadth

¶ 13 Relying primarily on this Court's opinion in *State v. Martin*, 171 Ariz. 159, 829 P.2d 349 (App.1992), Kessler argues that Regulation Number 1 and the Definitions are unenforceable because they improperly "regulate or burden virtually every aspect of a probationer's conduct simply because children may be present." He particularly contends that Regulation Number 1 and the Definitions unnecessarily infringe upon his First Amendment rights of freedom of religion and freedom of association.

¶ 14 In *Martin*, we addressed an individual's claim that the State had presented insufficient evidence that he had violated a term of his probation prohibiting him from having any "contact with children under the age of eighteen years." Martin, who was on probation for attempted molestation of a child, on one occasion had been present with other adults in the same house as two minor children, but he had spent no time alone with the children, and the State presented "no evidence of any physical or even verbal contact by Martin with these children nor of any setting conducive to improper behavior." *Id.* at 160, 829 P.2d at 350. In holding that the State had presented insufficient evidence that Martin had violated the "no contact" term of his probation, we stated that, in the context in which it was used, "the word 'contact' [was] so vague as to fail to provide Martin with notice about what kind of group association [was] prohibited." *Id.* We further observed:

---

**3.** The Labor Day weekend retreat was not the first time that Kessler had run afoul of the terms of his probation. One year earlier, the trial court had modified his probation to include ninety days confinement in the Yuma County Adult Detention Facility after Dryer had observed Kessler at a Yuma park, past the hour of his curfew, wearing a cowboy hat bearing the words "Sex Machine."

While the term understandably intends to prohibit potential sexual contact with minors, the language is so broad as to also prohibit Martin from merely being present with minors in conventional places such as schools, shopping malls, churches, sporting events, or social events. More qualified language is needed regarding "contact" to avoid penalizing such innocent physical presence with other human beings.

*Id.* This language indicates our concern that the term of probation at issue was both impermissibly vague and overbroad.

¶ 15 Overbreadth and vagueness challenges often appear in tandem. The two concepts, however, implicate different constitutional infirmities. "An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but the statute includes within its scope activities which are protected by the First Amendment." *State v. Jones,* 177 Ariz. 94, 99, 865 P.2d 138, 143 (App.1993), quoting John E. Nowak, et al., CONSTITUTIONAL LAW, ch. 18, § III at 868 (2d ed.1983). In comparison, an unconstitutionally vague statute fails to give a person of average intelligence reasonable notice of what behavior is prohibited or permits arbitrary and discriminatory enforcement. *State v. Steiger,* 162 Ariz. 138, 141–42, 781 P.2d 616, 619–20 (App.1989).

¶ 16 In relying on *Martin,* Kessler does not argue that Regulation Number 1 or the Definitions are unconstitutionally vague. These Definitions explain what type of contact was prohibited, whereas in *Martin* there were no explanations regarding what type of contact was barred. Moreover, in a recent decision, this Court found that probation conditions virtually identical to Regulation Number 1 and the Definitions were not unconstitutionally vague. *State v. Maggio,* 196 Ariz. 321, 323, 996 P.2d 122, 124 (App.2000)(finding no vagueness because the "specific instructions to the Defendant in this case explained how he should or should not behave"). Rather, Kessler maintains that Regulation Number 1 and the Definitions are unconstitutionally overbroad because they proscribe his "innocent physical presence" with minors and thereby infringe upon such constitutional guarantees as the free exercise of religion and freedom of association.

¶ 17 Before we can address the substance of this issue, however, we must determine if Kessler has standing to assert it. Traditionally, one who asserts a claim of statutory overbreadth or vagueness does not have standing if his conduct falls squarely within the constitutionally legitimate prohibitions of the regulation at issue. *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *State v. Musser,* 194 Ariz. 31, 32, 977 P.2d 131, 132 (1999). Kessler did not violate his probation simply by attending a retreat at which children were present. He committed much more specific acts which fell squarely within the regulation's appropriate purpose of preventing one who is subject to the Sex Offender Supervision Program from interacting with children. Kessler's sharing a tent with a thirteen-year-old boy, playing with children without supervision, "protecting" children near the restroom and accompanying a boy to a campsite all fell within the plainly constitutional reach of Regulation Number 1 and the Definitions.

¶ 18 A narrow exception to this standing requirement exists in the context of the First Amendment. In certain cases, a person whose activities are not constitutionally protected may challenge a law as overbroad if it "substantially abridges the First Amendment rights of other parties not before the court." *Musser,* 194 Ariz. at 32, 977 P.2d at 132, quoting *Village of Schaumburg v. Citizens,* 444 U.S. 620, 634–35, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980); *see also State v. McLamb,* 188 Ariz. 1, 9, 932 P.2d 266, 274 (App.1996), *cert. denied,* 522 U.S. 814, 118 S.Ct. 60, 139 L.Ed.2d 23 (1997). This exception exists in order to ensure that protected speech and expression are not chilled. *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 60, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *McLamb,* 188 Ariz. at 9, 932 P.2d at 274; *Appeal in Maricopa County Juv. Action No. JT9065297,* 181 Ariz. 69, 73, 887 P.2d 599, 603 (App.1994). However, if the regulation's "deterrent effect on legitimate expression is not both real and substantial, and if the statute is readily subject to a narrowing construction by the state courts, the litigant is not permitted to assert the rights of third parties." *American Mini Theatres,* 427 U.S. at 60, 96 S.Ct. 2440; *see also Musser,* 194 Ariz. at 32, 977 P.2d at 132;

*McLamb,* 188 Ariz. at 9, 932 P.2d at 274; *Juvenile Action No. JT9065297,* 181 Ariz. at 73, 887 P.2d at 603.

¶ 19 Kessler argues that his right of religious freedom and his right of association are burdened by Regulation Number 1 and the Definitions, but he does not explains how those not before the court would have their freedom of speech or expression chilled by the regulation. First, only those on probation for sexual crimes would be subject to this regulation. Second, one's freedom of speech or expression is not directly affected by this regulation; only the right of sex-offender probationers to associate with children is affected. This is a legitimate regulation to supervise an individual adjudicated guilty of a criminal offense governing primarily conduct, not speech; therefore, Kessler must show that its chilling effect on others' expression or association is significant in order to gain standing to challenge the regulation for overbreadth. *See Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Musser,* 194 Ariz. at 32–33, 977 P.2d at 132–33. Because this regulation does not substantially chill First Amendment rights, Kessler lacks standing to assert that the regulation is overbroad on the behalf of parties not before the court. Nonetheless, we will consider the thrust of Kessler's argument, which is that Regulation Number 1 and the Definitions violate his own constitutional rights to freedom of association and freedom of religion.

¶ 20 In addressing Kessler's claim that the Regulation and its Definitions violate his own constitutional rights, we begin by determining the effect his probationary status has on his argument. "To remain at liberty under a suspended sentence is not a matter of right but a matter of grace." *State v. Crowder,* 103 Ariz. 264, 265, 440 P.2d 29, 30 (1968). As a result, a probationer is subject to restriction of his constitutional rights to a greater degree than would be permissible outside the criminal-justice system. *State v. Montgomery,* 115 Ariz. 583, 584, 566 P.2d 1329, 1330 (1977) (noting that probationers enjoy a reduced expectation of privacy and upholding a probation condition which dictated that the defendant would submit to a warrantless search by police at any time). "Thus, where a condition impinges on but does not violate the defendant's fundamental rights, the condition may still be constitutional." *State v. Nickerson,* 164 Ariz. 121, 123, 791 P.2d 647, 649 (App.1990); *see United States v. Bee,* 162 F.3d 1232, 1234–35 (9th Cir.1998)("Probationers, like parolees and prisoners, properly are subject to limitations from which ordinary persons are free," quoting *United States v. Consuelo–Gonzalez,* 521 F.2d 259, 265 (9th Cir.1975)), *cert. denied,* 526 U.S. 1093, 119 S.Ct. 1509, 143 L.Ed.2d 661 (1999).

¶ 21 "Courts have consistently upheld imposition of conditions of probation that restrict a defendant's freedom of speech and association when those conditions bear a *reasonable relationship* to the goals of probation." *United States v. Turner,* 44 F.3d 900, 903 (10th Cir.)(emphasis added and citations omitted), *cert. denied,* 515 U.S. 1104, 115 S.Ct. 2250, 132 L.Ed.2d 258 (1995); *see Nickerson,* 164 Ariz. at 123, 791 P.2d at 649 (upholding condition preventing probationer from being in the company of his spouse because it was reasonably related to the goal of rehabilitating him); *State v. Donovan,* 116 Ariz. 209, 211–12, 568 P.2d 1107, 1109–10 (App.1977)(upholding conditions that prohibited probationer from associating with his girlfriend since the conditions related to his rehabilitation). "The question is whether there is a reasonable nexus between the conditions imposed and the goals to be achieved by the probation." *State v. Davis,* 119 Ariz. 140, 142, 579 P.2d 1110, 1112 (App.1978)(finding such a nexus existed in upholding a condition prohibiting probationer from obtaining custody of her children); *see Malone v. United States,* 502 F.2d 554, 556–57 (9th Cir.1974)(finding a "reasonable nexus between the probation conditions and the goals of probation" in that case and noting that a "convicted criminal may be reasonably restricted as part of his sentence with respect to his associations in order to prevent his future criminality"), *cert. denied,* 419 U.S. 1124, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). A court will not "strike down conditions of release, even if they implicate fundamental rights, if such conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism." *United States v. Schave,* 186 F.3d 839, 843 (7th Cir.1999).

¶ 22 A reasonable relationship clearly exists between Regulation Number 1's requirement that Kessler not have unsupervised or unchaperoned contact with children and the goals of rehabilitating him and protecting the public from any further criminal acts he might commit. We therefore reject his challenge to Regulation Number 1 and the Definitions. Although restrictive of Kessler's ability to be "merely present" with minors "in conventional places such as schools, shopping malls, churches, sporting events, or social events," *Martin,* 171 Ariz. at 160, 829 P.2d at 350, Regulation Number 1 and the Definitions are not so unreasonable that they violate the broad discretion given to the trial court in setting terms of probation. *Bee,* 162 F.3d at 1235–36 (upholding supervised release condition requiring that defendant "not have contact with children under the age of 18 unless approved by [his] probation officer" and observing that "even very broad conditions are reasonable if they are intended to promote probationer's rehabilitation and to protect the public"); *see Nickerson,* 164 Ariz. at 123, 791 P.2d at 649; *Donovan,* 116 Ariz. at 211–12, 568 P.2d at 1109–10.

### B. Selective Enforcement

¶ 23 Kessler next argues that Regulation Number 1 and the Definitions are so broad in their scope that the State necessarily must engage in selective enforcement of those provisions. In other words, in his view, selective enforcement results not because the provisions are impermissibly vague but because, to the contrary, they are so all-encompassing in their precision that the State could not possibly enforce them in every instance. Kessler maintains that "selective enforcement inevitably means discriminatory enforcement," thereby suggesting that Regulation Number 1 is applied in a manner that violates equal protection.[4]

¶ 24 We reject this argument because nothing in the record suggests that Regulation Number 1 is being enforced in a discriminatory manner. The State's alleged failure to pursue all violations of the regulation is not a sufficient basis for a successful claim of

a denial of equal protection. *In re Matter of Pima County Juv. Appeal No. 74802–2,* 164 Ariz. 25, 29, 790 P.2d 723, 727 (1990), citing *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Moss v. Hornig,* 314 F.2d 89, 92 (2nd Cir.1963), *disapproved on other grounds, State v. Getz,* 189 Ariz. 561, 944 P.2d 503 (1997). Certainly Kessler's mere assertion that "selective enforcement inevitably means discriminatory enforcement" fails to demonstrate an equal-protection violation. *Pima County Juv. Appeal No. 74802–2,* 164 Ariz. at 30, 790 P.2d at 728; *see State v. Denny,* 116 Ariz. 361, 365, 569 P.2d 303, 307 (App.1977); *State v. Scott,* 17 Ariz.App. 183, 185, 496 P.2d 609, 611 (1972). Without some evidence of discriminatory enforcement of Regulation Number 1, we reject Kessler's argument that the regulation and the Definitions are unconstitutional because they result in selective enforcement.

### C. Due Process

¶ 25 Kessler's final argument is that it was fundamentally unfair and thus a violation of due process for the trial court to conclude that he violated the terms of his probation when he had received his probation officer's permission to attend the retreat. According to him, "it was obvious" that allowing him to attend the retreat "would inevitably result in his violating his probation ."

¶ 26 Kessler's argument would be more persuasive had he been charged with violating his probation by merely attending the retreat. The petition to revoke, however, was premised on much more specific acts he committed while on the retreat. These acts included Kessler's decision to share a tent with a thirteen-year-old boy, his unsupervised contact with the children at the swing set, his decision to act as the "protector" of children he observed near the restroom and his contact with the boy whom he accompanied to another campsite.

¶ 27 It does not "inevitably" follow from the probation officer's decision to allow Kessler to attend a church retreat in the company of two adult men and under the supervision of the associate pastor of his church that he would engage in the inappropriate behav-

---

4. Kessler does not use the phrase "equal protection." His reference to "discriminatory enforce-

ment," however, suggests that this is the premise of his argument.

ior that ultimately occurred. Given the facts of this case, there was no fundamental unfairness in the trial court's finding that Kessler had violated the terms of his probation.

## CONCLUSION

¶ 28 Having rejected Kessler's challenges to the constitutionality of Regulation Number 1 and the Definitions, we affirm the order revoking Kessler's probation.

CONCURRING: WILLIAM F. GARBARINO, Judge, RUDOLPH J. GERBER, Judge.

---

**SEX OFFENDER SUPERVISION PROGRAM**

**DEFINITION OF TERMS REGARDING CONTACT WITH MINORS**

*A minor* is defined as anyone under the age of eighteen (18) years of age. Any form of direct contact (items 1 through 3 below), indirect contact (item 4 below) or proximate contact (item 5 below) is prohibited whether you are in a public or non-public area, regardless if the minor is known or not known to you unless you are supervised/chaperoned (terms used interchangeably) as described below.

DEFINITIONS:

| | | |
|---|---|---|
| 1. | *Actual Physical Touching:* | self explanatory |
| 2. | *Association or relationship:* | taking any action which furthers a relationship with a minor, such as visiting, writing letters, sending messages, buying presents, etc. |
| 3. | *Communication in any form:* | including verbal communication such as talking with, telephone communication, written communication such as letters, notes, etc.; computer interaction such as e-mail, using the Internet, etc.; and non-verbal communication such as waiving, gesturing, winking, making facial expressions, etc. |
| 4. | *Indirect Contact:* | making contact with a minor through another person or source; which can include asking a parent, teacher, or a friend to tell a minor something; to have a minor answer questions; to send pictures; to deliver or receive packages, gifts, or money. |
| 5. | *Proximity Contact:* | being in the proximity (same place/area) of a minor where communication could be established. If the minor is known to the offender, the offender must control the situation by leaving immediately (without unnecessary delay). |
| 6. | *Supervised/Chaperoned Contact* | when an offender is allowed to have contact with a minor under prearranged conditions and times. The conditions of the contact must be approved in writing before the contact. Approval for such contacts must be granted by the supervising probation officer. No one else can authorize a contact. Deviations or substitutions to any authorized contact must be coordinated prior to the contact and approval must be made, in writing, by the supervising probation officer. If the Court has imposed a specific condition/order regarding contact limitations, the Court must approve any previously unauthorized contact in writing. |
| 7. | *Supervisor/chaperone:* | this is an adult who has been approved by the supervising probation officer to supervise/chaperone a contact between a minor and an offender. A supervisor/chaperone is not simply another adult. The supervisor/chaperone must be approved in writing by the supervising probation officer before any contact taking place. Supervisors/chaperones must have signed a Chaperone Application and Chaperone Contract, agree to monitor the situation, be present (within both sight and sound) during the entire contact, and report any violations to the probation officer. |
| 8. | *In Public areas: Minor not known:* | if you are in a public place such as a shopping mall, a grocery store, church, movie theater, park, arcade, etc., and you encounter a minor whom you do not know, do not initiate contact. Do not pay attention to the minor; do not look at the minor; do not talk to the minor or communicate in any way - verbal or nonverbal. |

All efforts should be made to minimize such contact with minors whom you do not know by timing visits to public places when minors are least likely to be present. Example: Do not go to Saturday afternoon matinee movies where children are most likely to be present. If a minor is still encountered, do not initiate any communication - verbal or nonverbal. Never put the responsibility on the minor to avoid contact

If a minor initiates communication, tell them you cannot help them, politely refer them to somebody else and immediately move away from the minor and leave the area. If the minor persists in trying to communicate, the offender needs to leave the public place and contact the supervising probation officer or surveillance officer immediately to advise the officer of the contact.

9.  *In Public areas: Minor is known:*

If you are in a public place and you encounter a minor whom you know, all efforts should be made to make sure that the minor does not see you. You must leave the public place immediately. Never put the responsibility on the minor to avoid communication. If the victim is encountered, leave immediately; then contact your probation officer or surveillance officer immediately to advise the officer of the contact.

10.  *Non-Public areas: Minor known and/or not known:*

If you are in a private area such as your house, a friend's house, club, etc., and a minor is present, whether or not you know the minor, you must leave immediately unless the contact is authorized as described above. If you are in a private area and a minor comes in, you must leave immediately and contact the supervising probation officer or surveillance officer at once to advise the officer of the contact.

Example 1:   You are at a friend's house and a minor comes in; you must leave immediately.

Example 2:   A minor comes into your yard to play or ask questions, you must go into your house immediately or leave the yard.

Example 3:   A minor comes to your door to sell magazines, do not answer the door. You must look to see who is at the door (ensuring that the person is not a minor) before opening the door, have someone else answer the door or not answer the door at all.

5-11-99
Date

_____
Probation Officer

Acknowledgment: I have read the above and/or had the above definitions explained to me and fully understand the above definitions as they apply to the special regulations of probation for sex offenders and that it is my responsibility to comply fully with these contact restrictions as defined above. I understand that the Court could revoke my probation and sentence me to the maximum sentence permitted by law if I fail to comply with these contact requirements and restrictions.

5/11/99
Date

_____
Defendant

A:\SEXOFFDEF99.wpd

White copy - Clerk's Office
Yellow copy - Probationer File
Pink copy - Probationer

### THE YUMA COUNTY ADULT PROBATION DEPARTMENT

## SPECIAL REGULATIONS OF PROBATION FOR SEX OFFENDERS

Defendant: **Kessler, Scott**    Case No.: **SCR97 C 00879**

99 MAY 14
CLERK BEVERLY
45364

**1.** Not initiate, establish, or maintain contact whatsoever with any child (under the age of 18) nor attempt to do so as defined by the Definition of Terms Regarding Contact with Minors, except under circumstances approved in advance and in writing by the probation officer. You shall report all casual/incidental contact with children to the treatment provider and the probation officer.

**2.** Not reside with any child (children) (under the age of 18) or contact your child (children) in any manner unless approved in advance and in writing by the probation officer, regardless of any Court order to the contrary.

**3.** Have no contact with the victim or the victim's family and you shall not enter onto the premises, travel past, or linger near where the victim resides except under specific circumstances which must be approved in advance and in writing by the probation officer. You shall have no contact (as defined in paragraph 1 above) with the victim except under specific circumstances which must be approved in advance and in writing by the probation officer.

**4.** Not go to, travel past or hang around schools, parks, playgrounds, arcades, the river, or other places primarily used by children (under the age of 18) except under circumstances approved in advance and in writing by the probation officer.

**5.** Not date or socialize with anybody who has children under the age of 18 except under specific circumstances which must be approved in advance and in writing by the probation officer.

**6.** Reside at a place approved in advance by the probation officer.

**7.** Abide by any curfew imposed by the probation officer.

**8.** Not possess, view, and/or be in the presence of any sexually oriented or sexually stimulating materials, including visual, auditory, telephonic, electronic media or computer programs or services, unless authorized to do so in advance and in writing by the probation officer. Not utilize 900 telephone numbers or telephone numbers that access sexually oriented or sexually stimulating material, or establish/maintain Internet service except under specific circumstances which must be approved in advance and in writing by the probation officer. Further, you shall not enter a residence or browse/shop in any place of business where such material or entertainment is available.

**9.** Wear appropriate clothing at all times, which includes the wearing of underwear and outer clothing appropriate to the seasonal conditions in your home or places where others might see you.

**10.** Not hitchhike or pick up hitchhikers.

**11.** Not possess counter surveillance devices such as scanners or pagers except under circumstances approved in advance and in writing by the probation officer.

**12.** Actively participate in sex offender treatment and remain in such treatment at the discretion of the probation officer. You shall reimburse the probation department for any and all treatment expenses. Further, you shall not change treatment providers without the prior written approval of the probation officer.

**13.** Attend and actively participate in screening, testing and/or evaluation, including but not limited to psychological assessments, physiological assessments, polygraph testing, ect., at the discretion of the probation officer. Further, you shall reimburse the probation department for any and all screening, testing and/or evaluating expenses.

**14.** Authorize treatment provider(s) to disclose information about your attendance and progress in treatment to the Court and/or probation department.

**15.** Register at the Yuma County Sheriff's Office as a sex offender within ten days per A.R.S.§§ 13-3821.

**16.** N/A

_____    _____
Date **5-11-99**    Probation Officer

Acknowledgment:    I have read the above and/or had the above explained to me and fully understand the above regulations and my responsibility to comply fully with these regulations. I understand that the Court could revoke my probation and sentence me to the maximum sentence permitted by law if I violate any of the above regulations.

_____    _____
Date **5/11/99**    Defendant

`:\OFFICE\WPWIN\FORMS\SPECIAL.REG\SEXOFFEN.REG`    29    White copy - Clerk's Office
Yellow copy - Probationer File