977 P.2d 131

**STATE of Arizona, Appellee,**

v.

**Geoffrey G. MUSSER, Appellant.**

**No. CR–97–0367–PR.**

Supreme Court of Arizona,
En Banc.

March 23, 1999.

Janet Napolitano, The Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Linda K. Knowles and Mona S. Peugh–Baskin, Assistant Attorneys General, Phoenix, for Appellee.

Dean Trebesch, Maricopa County Public Defender by Brian C. Bond, Deputy Public Defender, Phoenix, for Appellant.

McGREGOR, Justice.

¶ 1   The court of appeals reversed appellant Geoffrey Musser's conviction for violating Arizona's telephone harassment statute, Arizona Revised Statutes (A.R.S.) § 13–2916.A (the statute), on grounds that the statute is overbroad and infringes on constitutionally protected speech.   Because we hold that the court erred in granting appellant standing to challenge the constitutionality of the statute, we vacate the decision of the court of appeals and reinstate appellant's conviction.

I.

¶ 2   On August 2, 1994, Musser called the office of the Chief Justice of the Arizona Supreme Court to complain about a recent unpleasant encounter with a justice court. Musser became frustrated when he learned that the Chief Justice was not available to take his call and stated that he "might just have to show up on the judge's doorstep and discuss the matter at gunpoint."

¶ 3   The state charged Musser with violating A.R.S. § 13–2916.A,[1] and he admitted to

---

1. At the time of Musser's conviction, the telephone harassment statute made it unlawful "for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to use a telephone ... [to] threaten to inflict injury or physical harm" to persons or their property. A.R.S. § 13–2916.A. Apparently in response to the court of appeals' opinion in this case, the Arizona

authorities that he made the threatening telephone call. The justice court convicted Musser of violating the statute and sentenced him to six months' probation. The superior court affirmed Musser's conviction.

¶ 4 Musser then appealed to the court of appeals, arguing that the statute is unconstitutionally overbroad because it proscribes speech protected by the First Amendment to the United States Constitution and article II, section 6 of the Arizona Constitution. Musser conceded that his conduct fell within the acts prohibited by the statute, that his telephonic threat was not a constitutionally protected activity, and that his conduct could be held to violate a permissibly drafted statute. Nevertheless, the court of appeals permitted Musser to challenge the constitutionality of the statute because it found that a "colorable prospect" existed that the law would substantially deter legitimate expression. The court then held A.R.S. § 13–2916.A to be facially overbroad and therefore unconstitutional. Because the court did not apply the appropriate test to determine whether Musser had standing to bring a First Amendment overbreadth challenge, we granted review.

## II.

¶ 5 Traditionally, a person to whom a statute may constitutionally be applied does not have standing to challenge that statute simply because it conceivably could be applied unconstitutionally in other cases. *See Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984); *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). This principle "reflect[s] the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." *Broadrick,* 413 U.S. at 610–11, 93 S.Ct. at 2915. However, courts have carved a narrow exception to the standing requirement in the First Amendment area. Under some circumstances, litigants whose own activities are constitutionally unprotected can nonetheless challenge a statute as overbroad if the law "substantially abridges the First Amendment rights of other parties not before the court." *Village of Schaumburg v. Citizens,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). Because invalidating a statute forbids its enforcement, even against conduct that the state has power to proscribe, until it can be sufficiently narrowed to remove the perceived threat to protected speech, applying the overbreadth exception is considered "strong medicine" only to be employed "as a last resort." *Broadrick,* 413 U.S. at 613, 93 S.Ct. at 2916.

¶ 6 In developing the overbreadth doctrine, the Supreme Court has cautioned against allowing the exception to swallow the standing rule and has established several factors to consider in determining whether to apply the standing exception. First, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep" for a court to invoke the standing exception and hold a statute unconstitutional. *Id.* at 615, 93 S.Ct. at 2918. "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Taxpayers for Vincent,* 466 U.S. at 799, 104 S.Ct. at 2126. A statute is not subject to an overbreadth challenge if the "legitimate reach [of the statute] dwarfs its arguably impermissible applications." *New York v. Ferber,* 458 U.S. 747, 773, 102 S.Ct. 3348, 3363, 73 L.Ed.2d 1113 (1982). Moreover, we will presume that Arizona's courts, if faced with an application of the statute that exceeds its valid reach, would not give the statute an impermissibly broad interpretation.

¶ 7 Musser argues that the statute as written threatens protected speech because it could be interpreted as proscribing conduct such as threatening to institute lawful civil proceedings, to fire an employee for unsatisfactory performance, or to launch an economic boycott of a restaurant with racially discriminatory practices. While Musser has

Legislature amended A.R.S. § 13–2916.A and limited the scope of its prohibition to threatening "physical harm" to persons or their property. In

this opinion, our discussion of A.R.S. § 13–2916.A refers solely to the version of the statute in effect at the time of Musser's conviction.

conceived of some impermissible applications of the statute, he has provided no indication that any likelihood exists that the state would use the statute to reach such activities. Indeed, interpreting the statutory language to permit prosecution for such activities would require the state and the courts to expand the statute's reach considerably beyond that which the legislature intended. *Cf. State v. Steiger,* 162 Ariz. 138, 781 P.2d 616 (App. 1989) (defendant was able to show that fear A.R.S. § 13–1804.A.8 could be used to institute criminal proceedings against political opponents was realistic). If the state attempts to apply the statute impermissibly, the courts should refuse to permit proceedings based upon an invalid construction of the statute. We therefore perceive no "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court. . . ." *Taxpayers for Vincent,* 466 U.S. at 801, 104 S.Ct. at 2126.

¶ 8 Two other factors that limit the standing exception under which appellant seeks to proceed apply here. Courts are less likely to entertain overbreadth claims as the behavior a statute seeks to proscribe "moves from 'pure speech' toward conduct." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917. The statute at issue, which applies only if a defendant uses a telephone for the reasons proscribed, clearly implicates conduct as well as speech. Musser contends that the legislature moved from regulating conduct to proscribing protected speech in 1978 when it amended A.R.S. § 13–2916.A to change the prohibited conduct from "to telephone another" to "to use a telephone." Under either version of the language, however, a person must be charged with conduct—the use of a telephone. While using a telephone usually involves speech, it also necessarily involves conduct. Because the statute regulates conduct as well as speech, we are less likely to apply the standing exception to permit appellant to assert the rights of others.

¶ 9 Courts also generally curtail overbreadth attacks when expressive conduct "falls within the scope of [an] otherwise valid criminal law[ ] that reflect[s] legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917. Arizona clearly has a legitimate state interest in using its system of criminal laws to protect the public from menacing telephonic threats to harm one's person or property. *See State v. Bly,* 127 Ariz. 370, 371, 621 P.2d 279, 280 (1980) ("Power resides with the legislature to define that conduct which will not be tolerated in an ordered society and to provide punishment for those who violate public policy.") *Id.* Indeed, appellant does not even suggest that the statute does not apply to harmful, unprotected conduct.

¶ 10 Given these factors, we cannot conclude that this criminal statute poses such a real and substantial danger to protected expression of parties not before the court that Musser has standing to challenge the statute as overbroad. Any misuse of the statute, if such occurs, can be addressed and cured through case-by-case analysis of specific facts.

### III.

¶ 11 For the foregoing reasons, we vacate the decision of the court of appeals and reinstate appellant's conviction.

THOMAS A. ZLAKET, Chief Justice, and CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, and WILLIAM BRAMMER, Jr., Judge *, concur.

---

* Justice Stanley G. Feldman did not participate in the decision of this matter. Pursuant to art. VI, § 3 of the Arizona Constitution, the Honorable J. William Brammer, Jr., Judge of the Arizona Court of Appeals, Division Two, was designated to participate in this matter.