IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2003-0001 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| LAWRENCE BROWN, JR., | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20021979

Honorable Frank Dawley, Judge Pro Tempore
Honorable Howard Fell, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Michael T. O'Toole                                    Phoenix
                                                                    Attorneys for Appellee

Mark L. Langley                                                               Tucson
                                                                    Attorney for Appellant

P E L A N D E R, Presiding Judge.

¶1          After a jury trial, appellant Lawrence Brown was convicted of aggravated

harassment and later sentenced to an aggravated prison term of 2.5 years.  On appeal, Brown

argues the trial court erred in denying his motion to dismiss and reurges the arguments he made

in that motion. Brown contends Arizona's harassment statute, A.R.S. § 13-2921, is unconstitutionally vague and overbroad and violates his First Amendment right to freedom of speech. *See* U.S. Const. amend. I. We conclude that the statute does not implicate the First Amendment and that Brown lacks standing to challenge the statute on the other grounds. Therefore, we affirm.

## BACKGROUND

¶2 We view the largely undisputed facts and all reasonable inferences therefrom in the light most favorable to sustaining the conviction. *See State v. Henry*, 205 Ariz. 229, ¶2, 68 P.3d 455, ¶2 (App. 2003). In October 2000, Brown and the victim, D., met and began dating. In February 2002, D. ended the relationship. Although D. told Brown "several times," both "in person [and] over the phone" that she no longer wanted to see him, Brown "just wouldn't stay away" from her. D. then requested the Tucson City Court to issue an "Injunction Against Harassment" against Brown. *See* A.R.S. § 12-1809(A) ("A person may file a verified petition with a magistrate, justice of the peace or superior court judge for an injunction prohibiting harassment."). After a March 2002 hearing, which Brown attended, a city court magistrate granted D.'s request and ordered Brown to refrain from any contact with her without permission of the court.[1] That injunction order remained valid and in effect at all pertinent times.

¶3 Notwithstanding the injunction against harassment, Brown continued to call D. on both her home and cellular telephones. D. eventually "got tired of answering [Brown's] calls" and called the police, apparently sometime in May 2002. The police told D. to keep a log of the

---

[1]The propriety of the injunction against harassment issued by the city court is not at issue here.

calls and that "they would come out and verify the log from the Caller ID." In June, a police officer went to D.'s home and reviewed her caller identification system, her log of the calls, and the injunction against harassment. The officer then located Brown, who admitted to having called D. and having known about the injunction issued against him. Based on his having called D. in violation of the injunction, the state later charged Brown with aggravated harassment, in violation of A.R.S. § 13-2921.01(A)(1).[2]

¶4        Before trial, Brown moved to dismiss the charge, arguing that the harassment statute was vague, overbroad, and impinged on his First Amendment rights. After hearing argument, the trial court (Judge Dawley) denied the motion. This appeal followed Brown's ensuing jury trial, conviction, and sentencing.

## DISCUSSION

¶5        Sections 13-2921 and 13-2921.01, A.R.S., define the crimes of harassment and aggravated harassment. Under § 13-2921(A)(1), "[a] person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person . . . [a]nonymously or otherwise communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses." Section 13-2921(E) provides that "'harassment' means conduct directed at a specific person which would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person." Subsection (D) states that

_____

[2]The indictment also charged Brown with aggravated harassment based on his allegedly having harassed D. after having been convicted of domestic violence under A.R.S. § 13-3601. *See* A.R.S. § 13-2921.01(A)(2). The trial court, however, dismissed that charge with prejudice on the first day of trial.

§ 13-2921 "does not apply to an otherwise lawful demonstration, assembly or picketing." And,

§ 13-2921.01(A)(1) defines the aggravated harassment charge of which Brown was convicted:

> A person commits aggravated harassment if the person commits harassment as provided in § 13-2921 and . . . [a] court has issued an order of protection or an injunction against harassment against the person and in favor of the victim of harassment and the order or injunction has been served and is still valid.

¶6        In denying Brown's pretrial motion to dismiss, Judge Dawley reasoned:

> There's some interesting issues here, but the bottom line is this, that the First Amendment, like every other Amendment, is not absolute. The real question is whether the State has passed a law that has a legitimate purpose that is sufficiently narrow and that doesn't just arbitrarily or overbroadly interfere with communication and a person's right to speech.
>
> The focus of the offense of harassment is on the contact between particularized people, not on the character of the speech necessarily, although certainly that can be an element. I am required to presume a statute is Constitutional. I think that is still the law, even though we get into these different tests, I suppose, as to whether the statute affects speech or not. But I think that presumption still applies.
>
> And then the next question is: Can I interpret it in a way that it will be constitutional? And I do. And I think that may be an oversimplification, but the fact that it's the contact and not the speech and the fact that the statute specifically requires an intent or knowledge that the person is harassing, is not sufficient to prove that contact was made or speech was made. The state has to prove the specific intent or the general knowledge that the person is harassing in the process. And I think that's what, in my opinion, saves the statute.

## I. First Amendment Challenge

¶7        Brown first argues the trial court erroneously presumed that § 13-2921 is constitutional. According to Brown, the statute regulates speech on the basis of its content.

4

Therefore, he argues, the statute must be presumed unconstitutional and analyzed under a higher level of scrutiny than that used by the trial court. The state responds that the statute regulates only non-expressive conduct and, therefore, does not implicate the First Amendment at all. The state also argues that even if the statute were interpreted to apply to speech or expressive conduct, it does so in a content-neutral fashion and that the trial court correctly applied an intermediate level of scrutiny in analyzing the statute's constitutionality. We review de novo the constitutional claims and matters of statutory interpretation raised here. *See Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶6, 19 P.3d 1241, ¶6 (App. 2001).

¶8        Although § 13-2921(A)(1) prohibits certain kinds of "communication," it is well established that "[r]esort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act . . . raise[s] no question under that instrument." *Cantwell v. Connecticut*, 310 U.S. 296, 309-10, 60 S. Ct. 900, 906, 84 L. Ed. 1213, 1221 (1940); *see also Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S. Ct. 766, 769, 86 L. Ed. 1031, 1035 (1942); *State v. Starsky*, 106 Ariz. 329, 332, 475 P.2d 943, 946 (1970); *State v. Hagen*, 27 Ariz. App. 722, 725, 558 P.2d 750, 753 (1976). As one federal court has stated, "'[p]rohibiting harassment is not prohibiting speech, because harassment is not . . . protected speech. Harassment is not communication, although it may take the form of speech.'" *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988), *quoting State v. Thorne*, 333 S.E.2d 817, 819 (W. Va. 1985) (upholding West Virginia's telephone harassment statute).

¶9        Arizona courts also have concluded that statutes similar to § 13-2921 that prohibit certain types of communication and that contain a specific intent requirement do not implicate the

5

First Amendment. For example, in *Hagen*, an analogous case, Division One of this court upheld Arizona's telephone harassment statute, former A.R.S. § 13-895 (since renumbered A.R.S. § 13-2916), which provided:

> It shall be unlawful for any person, with intent to terrify, intimidate, threaten, harass, annoy or offend, to telephone another and use any obscene, lewd or profane language or suggest any lewd or lascivious act, or threaten to inflict injury or physical harm to the person or property of any person.

In finding the statute constitutional, the court stated, "[b]y specifying the *intent* with which the call must be made and the nature of the language prohibited, the statute clearly demonstrates that the prohibited activities find no protection under the First Amendment." 27 Ariz. App. at 725, 558 P.2d at 753; *see also Starsky*, 106 Ariz. at 333, 475 P.2d at 947 (in upholding disturbing the peace statute, our supreme court stated it was "inconceivable" that the First Amendment protected anyone's right to "wilfully and maliciously traverse the peace and quiet of his fellow citizens"); *Baker v. State*, 16 Ariz. App. 463, 466, 494 P.2d 68, 71 (1972) (in finding telephone harassment statute constitutional and First Amendment inapplicable, court stated, "[i]t is not the mere use of profanity which is subject to punishment but only profanity uttered over the telephone with the intent to terrify, intimidate, threaten, harass, annoy or offend").

¶10 Although in a broad sense § 13-2921 criminalizes certain types of "communication," we reject Brown's argument that the statute unconstitutionally regulates protected speech. Rather, criminal liability under the statute is based on the "manner" in which certain communication is conveyed and the underlying purpose for the communication. § 13-2921(A)(1). This is made clear by the statute's requirement that the communication must have been made with the specific "intent to harass." § 13-2921(A). In addition, the statute contains

6

both subjective and objective components, requiring the harassing conduct to be focused on "a specific person" and of a type that not only "in fact seriously alarms, annoys or harasses [that] person" but also "would cause a reasonable person to be seriously alarmed, annoyed or harassed." § 13-2921(E). In view of these statutory prerequisites, despite Brown's assertion to the contrary, no serious argument can be made that the statute renders criminal such isolated, pure speech as "an invitation to church," the subject of one of Brown's calls. Because the statute only criminalizes communications made with a specific, deliberate purpose, the statute does not apply to pure First Amendment speech and instead regulates, at most, a blend of speech and conduct.

¶11        Indeed, our supreme court has noted that use of a telephone for harassment purposes "clearly implicates conduct as well as speech." *State v. Musser*, 194 Ariz. 31, ¶8, 977 P.2d 131, ¶8 (1999); *see also Thorne*, 846 F.2d at 243 (telephone harassment statute "prohibits conduct and not protected speech"); *Gormley v. Director, Connecticut State Dep't of Probation*, 632 F.2d 938, 941-42 (2d Cir. 1980) (Connecticut's telephone harassment statute "regulates conduct, not mere speech. What is proscribed is the making of a telephone call, with the requisite intent and in the specified manner."); *McKillop v. State*, 857 P.2d 358, 363 (Alaska Ct. App. 1993) (telephone harassment statute "deals with an aspect of conduct mixed with speech"). Nonetheless, the First Amendment's protections, while literally only forbidding the abridgment of "speech," "can encompass expressive conduct." *Bird v. State*, 184 Ariz. 198, 204, 908 P.2d 12, 18 (App. 1995), *citing Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 2538-39, 105 L. Ed. 2d 342, 353 (1989).

¶12        The Supreme Court has stated, however, that it "cannot accept the view that an apparent limitless variety of conduct can be labeled 'speech' whenever the person engaging in the

7

conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 1678, 20 L. Ed. 2d 672, 679 (1968). From that premise, the Court has further observed that "[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Johnson*, 491 U.S. at 406, 109 S. Ct. at 2540, 105 L. Ed. 2d at 354-55.

¶13 "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, [the Supreme Court has] asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Id.* at 404, 109 S. Ct. at 2539, 105 L. Ed. 2d at 353, *quoting Spence v. Washington*, 418 U.S. 405, 410-11, 9 4 S. Ct. 2727, 2730, 41 L. Ed. 2d 842, 847 (1974). Some examples of expressive conduct found to have contained a "particularized message" are: the burning of a United States flag by a protestor at the Republican National Convention, *see Johnson*; the wearing of black armbands to protest the Vietnam War, *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969); and conducting a silent sit-in by African American persons against a library's segregation policy, *see Brown v. Louisiana*, 383 U.S. 131, 86 S. Ct. 719, 15 L. Ed. 2d 637 (1966). In all cases where a particularized message has been found in expressive conduct, "there was little doubt from the circumstances of the conduct that it formed a clear and particularized political or social message very much understood by those who viewed it." *Young v. New York City Transit Auth.*, 903 F.2d 146, 153 (2d Cir. 1990).

¶14 Here, in contrast, Brown's repeated entreaties to D. that they resume their relationship do not contain any such particularized political or social message warranting First

Amendment protection. Furthermore, in light of the injunction against harassment D. requested and obtained against Brown, and his admitted violation of the injunction, he cannot seriously argue that his unwanted calls to her actually conveyed any particularized message of the type the First Amendment protects. *See Young*, 903 F.2d at 153-54 (begging in New York's subway system conveyed no particularized message); *Bird*, 184 Ariz. at 204, 908 P.2d at 18 (no particularized message in making public wager on an election's outcome in order to raise voter interest). Indeed, had Brown engaged in the sort of public, expressive conduct that courts typically have found to contain a particularized political or social message, it is likely his conduct would have fallen within the exception in § 13-2921(D). But Brown does not and could not argue that that subsection applies to his conduct here. In sum, § 13-2921 regulates neither constitutionally protected speech nor expressive conduct and, thus, does not implicate the First Amendment.[3]

---

[3]As noted in ¶7, *supra*, Brown also contends § 13-2921 impermissibly regulates speech based on its content and, therefore, is presumptively unconstitutional and subject to strict scrutiny analysis. We find that contention dubious. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2754, 105 L. Ed. 2d 661, 675 (1989) ("The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys. . . . A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."); *Thorne v. Bailey*, 846 F.2d 241, 244 (4th Cir. 1988) (telephone harassment statute "is clearly not a censorial statute, directed at any group or viewpoint. It seeks to protect citizens from harassment in an even-handed and neutral fashion."); *State ex rel. Napolitano v. Gravano*, 204 Ariz. 106, ¶¶21, 24, 60 P.3d 246, ¶¶21, 24 (App. 2002) (although Arizona's civil forfeiture statutes "implicate First Amendment concerns," they "contain no reference to the content of speech or expressive materials" and, therefore, are "content-neutral"); *State v. Baldwin*, 184 Ariz. 267, 271, 908 P.2d 483, 487 (App. 1995) (finding Arizona's residential picketing statute, A.R.S. § 13-2909, content-neutral because, "[w]ithout regard to the message conveyed, it prohibits picketing and demonstrations directed at a particular residence and conducted with the intent to harass, annoy, or alarm"). Because we conclude that § 13-2921 does not implicate First Amendment rights, however, we do not specifically address this argument.

## II. Vagueness and Overbreadth Claims

¶15     Relying primarily on two out-of-state cases,[4] Brown also argues that § 13-2921 is unconstitutionally vague and overbroad. In reviewing those challenges to the statute, we are guided by "a strong presumption that it is constitutional." *State v. Kaiser*, 204 Ariz. 514, ¶8, 65 P.3d 463, ¶8 (App. 2003); *see also State v. Lefevre*, 193 Ariz. 385, ¶18, 972 P.2d 1021, ¶18 (App. 1998); *State v. Ochoa*, 189 Ariz. 454, 459, 943 P.2d 814, 819 (App. 1997). And, that presumption "requires the challenging party to establish beyond a reasonable doubt that the statute violates some provision of the constitution." *Bird*, 184 Ariz. at 203, 908 P.2d at 17; *see also State v. Casey*, 205 Ariz. 359, ¶11, 71 P.3d 351, ¶11 (2003) (statutes are presumed to be constitutional, and party challenging statute must show it infringes on constitutional guarantee or violates constitutional principle).

¶16     Although, "[o]verbreadth and vagueness challenges often appear in tandem," they are distinct concepts. *State v. Kessler*, 199 Ariz. 83, ¶15, 13 P.3d 1200, ¶15 (App. 2000); *see also State v. Baldwin*, 184 Ariz. 267, 269-70, 908 P.2d 483, 485-86 (App. 1995). "'An overbroad statute is one designed to burden or punish activities which are not constitutionally protected, but . . . includes within its scope activities which are protected by the First

---

[4] *See State v. Sanderson*, 575 P.2d 1025 (Or. Ct. App. 1978); *City of Everett v. Moore*, 683 P.2d 617 (Wash. Ct. App. 1984). Brown also relies to a lesser extent on *Kramer v. Price*, 712 F.2d 174 (5th Cir. 1983). *But see Gormley v. Director, Connecticut State Dep't of Probation*, 632 F.2d 938 (2d Cir. 1980) (telephone harassment statute not unconstitutionally overbroad on its face); *Galloway v. State*, 781 A.2d 851 (Md. 2001) (rejecting vagueness and overbreadth challenges to harassment statute); *State v. Gattis*, 730 P.2d 497, 501 (N.M. Ct. App. 1986) (noting that "statutes of this type have been upheld in twenty-one states"); *State v. Asmussen*, 668 N.W.2d 725 (S.D. 2003) (harassment statute neither unconstitutionally overbroad nor vague).

Amendment.'" *State v. Jones*, 177 Ariz. 94, 99, 865 P.2d 138, 143 (App. 1993), *quoting* John E. Nowak, et al., *Constitutional Law*, ch. 18, § III at 868 (2d ed. 1983); *see also Virginia v. Hicks*, 539 U.S. 113, ___, 123 S. Ct. 2191, 2196, 156 L. Ed. 2d 148, ___ (2003). In contrast,

> [a] statute is unconstitutionally vague if it fails to give "a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" or if it allows for arbitrary and discriminatory enforcement by failing to provide an objective standard for those who are charged with enforcing or applying the law.

*In re Maricopa County Juvenile Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 183, 692 P.2d 1027, 1032 (App. 1984), *quoting Grayned v. Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222, 227 (1972). "A statute whose terms are vague and conclusory does not satisfy due process requirements." *Id.*

¶17        Generally, a defendant may raise a vagueness or overbreadth challenge to a criminal statute only if he or she actually was injured by the allegedly unconstitutional statute. *Musser*, 194 Ariz. 31, ¶5, 977 P.2d 131, ¶5 (overbreadth); *State v. Steiger*, 162 Ariz. 138, 143, 781 P.2d 616, 621 (App. 1989) (vagueness). Thus, if a defendant's conduct is not constitutionally protected and falls within the statute's legitimate scope, he or she generally does not have standing to challenge the statute on vagueness or overbreadth grounds. *See In re Maricopa County Juvenile Action No. JT9065297*, 181 Ariz. 69, 73, 887 P.2d 599, 603 (App. 1994); *Hagen*, 27 Ariz. App. at 724, 558 P.2d at 752 ("One whose conduct is clearly proscribed by the terms of a statute may not successfully challenge it for vagueness."); *see also Kaiser*, 204 Ariz. 514, ¶5, 65 P.3d 463, ¶5; *State v. Proctor*, 196 Ariz. 557, ¶26, 2 P.3d 647, ¶26 (App. 1998).

11

¶18        A "narrow exception" to the traditional standing rule, however, is recognized in First Amendment cases. *Musser*, 194 Ariz. 31, ¶5, 977 P.2d 131, ¶5; *see also Franzi v. Superior Court*, 139 Ariz. 556, 563, 679 P.2d 1043, 1050 (1984); *Steiger*, 162 Ariz. at 145 n.3, 781 P.2d at 623 n.3. If the statute "'may cause persons not before the Court to refrain from engaging in constitutionally protected speech,'" then Brown has standing to challenge the statute and, if his challenge is sustained, the statute cannot be applied to him either. *State v. Torres-Mercado*, 191 Ariz. 279, 282, 955 P.2d 35, 38 (App. 1997), *quoting Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 60, 96 S. Ct. 2440, 2447, 49 L. Ed. 2d 310, 320 (1976); *see also Musser*, 194 Ariz. 31, ¶5, 977 P.2d 131, ¶5. But that exception to the standing requirement applies only if the statute's deterrent effect on legitimate expression is both "real" and "substantial." *Musser*, 194 Ariz. 31, ¶6, 977 P.2d 131, ¶6, *quoting Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 2918, 37 L. Ed. 2d 830, 842 (1973); *see also Hicks*, 539 U.S. at ___, 123 S. Ct. at 2197, 156 L. Ed. 2d at ___ (also noting that whether state court should entertain an overbreadth challenge "is entirely a matter of state law").

¶19        We conclude that Brown does not have standing to raise either his vagueness or overbreadth challenge. As discussed in detail above, Brown's conduct at issue here was not constitutionally protected. Moreover, the evidence sufficiently established all requisite elements for conviction under § 13-2921.01, and the jury's verdict so reflects.

¶20        Nonetheless, Brown argues that the statute "criminalizes any delivery of bad news, or delivery of a disturbing message regardless of fault[,] . . . the firing of an employee, because such conduct is alarming and annoying[,] . . . [and] the publication of information in a newspaper, because a reasonable person might be alarmed or annoyed by the prospect of war or economic

12

losses." But we are unpersuaded that such summary, hypothetical assertions support an exception to the standing requirement here.

¶21 None of the foregoing examples of conduct that Brown asserts § 13-2921 criminalizes is of a type undertaken with an "intent to harass," as the statute requires. Additionally, though Brown might "conceive[] of some impermissible applications of the statute, he has provided no indication that any likelihood exists that the state would use the statute to reach such activities." *Musser*, 194 Ariz. 31, ¶7, 977 P.2d 131, ¶7. "Indeed, interpreting the statutory language to permit prosecution for such activities would require the state and the courts to expand the statute's reach considerably beyond that which the legislature intended." *Id.* Accordingly, "[a]ny misuse of the statute, if such occurs, can be addressed and cured through case-by-case analysis of specific facts." *Id.* at ¶10; *see also State v. Hazlett*, 205 Ariz. 523, ¶¶23-26, 73 P.3d 1258, ¶¶23-26 (App. 2003); *cf. McKillop*, 857 P.2d at 364 (Alaska's telephone harassment statute "must be interpreted to prohibit telephone calls only when the call has no legitimate communicative purpose—when the caller's speech is devoid of any substantive information and the caller's sole intention is to annoy or harass the recipient"). That analysis will be informed by the presumption that, "if faced with an application of the statute that exceeds its valid reach, [Arizona courts] would not give the statute an impermissibly broad interpretation." *Musser*, 194 Ariz. 31, ¶6, 977 P.2d 131, ¶6.

¶22 We also find the narrow exception to the standing requirement inapplicable here because, as noted earlier, § 13-2921 "regulates conduct as well as speech." *Id.* at ¶8. Therefore, Brown is not entitled to "assert the rights of others," *id.*, particularly when the statute poses no realistic danger of significantly compromising established First Amendment rights of others and

13

when Brown's own conduct clearly falls within the scope of an otherwise valid statute.  *Id.* at ¶¶7, 9.  Under these circumstances, Brown is not entitled to challenge § 13-2921's validity under the exception to the traditional standing requirement.  Therefore, because Brown lacks standing to assert his vagueness and overbreadth arguments, we do not address them.

## DISPOSITION

**¶23**        Brown's conviction and sentence are affirmed.


_____
JOHN PELANDER, Presiding Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Chief Judge


_____
PETER J. ECKERSTROM, Judge