NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RONNIEJAMES WILEY MARTINEZ, *Appellant.*

No. 1 CA-CR 24-0100

FILED 02-20-2025

Appeal from the Superior Court in Mohave County
No. S8015CR202300128
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Grand Canyon Law Group LLC, Mesa
By Angela Poliquin, Eva Fa'alogo, Kevin R. Myer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge David D. Weinzweig joined.

---

**K I L E Y**, Judge:

¶1      A jury convicted Ronniejames Wiley Martinez of stalking. Martinez now appeals, arguing there was insufficient evidence to support his conviction, the statute under which he was convicted is unconstitutionally vague and overbroad, and the superior court erred in instructing the jury. Because he has failed to show error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2      We view the evidence in the light most favorable to sustaining the jury's verdict. *State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004).

¶3      "Carrie" (a pseudonym) was a massage therapist with the Del E. Webb Wellness Center (the "Wellness Center") at Kingman Regional Medical Center. Carrie used Facebook's messaging feature to communicate with her clients when scheduling massage appointments.

¶4      In September 2020, Martinez, a member of the Wellness Center gym, began seeing her for massages every other week. Upon learning that Carrie was single, Martinez expressed romantic interest, which Carrie did not reciprocate. On several occasions he asked to see her outside of work. She always declined and asked him to stop his advances. Martinez disregarded her requests and continued to ask to see her outside of work.

¶5      Martinez began showing up at the massage clinic at the Wellness Center to talk to Carrie even when he did not have a scheduled appointment. He frequently appeared at the front desk just after she arrived for work and, as Carrie later testified, would "linger[]" there. If he sent her a message via Facebook and she failed to respond the same day, he would confront her "the next day asking why." "[H]e . . . kind of fixated on me," Carrie testified, "[a]nd he was very persistent."

¶6      Carrie further testified that Martinez was easily angered. When he became upset with her or another Wellness Center employee, she

testified, he would "physically shake" and "ball up his fist to the point where you thought he was gonna, like, deck you in the face." She described one incident during a massage session in August 2021 when she said something – adding, "I can't remember what" – that provoked him. Martinez called her a "bitch," she said, and then "jumped off [the] massage table" and "would not let [her] leave the room."

¶7 Although she was "fearful" of Martinez, Carrie testified, she continued seeing him as a massage client, explaining, "I give [people] chances" because "I want to help people." "Most people I see are hurt," she stated, "and when you're hurt, you're not a happy person." By November 2021, however, Carrie decided that she "was done giving [Martinez] chances" and would no longer provide him with massage services.

¶8 On January 24, 2022, Carrie left work at the end of her shift and found that all four tires and the soft top of her Mustang convertible had been slashed. She called the police and made a report.

¶9 A little over a week later, on February 2, 2022, Carrie left work and drove to the home of her boyfriend, "Robert," when, as she testified, she "felt like [she] was being followed." When she pulled into Robert's driveway, she "saw a vehicle driving past" the house while "going really slow." She decided to park her car in the garage and, while doing so, she saw "the same car that passed by slowly, coming now back the opposite way." Carrie testified that the car "looked similar to" Martinez's car. Later that evening, the couple heard "a loud crash." Exiting the house, they discovered that the rear tires on Robert's pickup truck, which was parked outside the home, had been slashed and the garage windows were broken. Carrie again called the police.

¶10 The tires of Carrie's convertible were slashed four more times, once when it was parked at her parents' house, once when it was parked at Robert's house and twice at the Wellness Center parking lot.

¶11 A police detective obtained cellphone data by search warrant that showed that Martinez's cell phone "pinged" at the Wellness Center on the afternoon of January 24, when the tires and top of Carrie's convertible were slashed. Martinez's cell phone also "pinged" near Carrie's house "for approximately ten minutes" that same afternoon. The records further showed that the following day, Martinez's phone "circle[d] around the area of the Wellness Center" several times. And the records showed that, on the evening Robert's tires were slashed and garage windows were broken, Martinez's phone "pinged" from the Wellness Center to the vicinity of

Robert's house where it remained until around the time Carrie and Robert heard the "loud crash."

¶12        Martinez was charged with one count of stalking in violation of A.R.S. § 13-2923(A)(1) and three counts of criminal damage in violation of A.R.S. § 13-1602(A)(1). Before trial, Martinez moved to dismiss the stalking charge, alleging that A.R.S. § 13-2923(A)(1) was unconstitutionally vague. After briefing, the superior court denied the motion to dismiss the stalking charge.

¶13        After the State presented its case-in-chief at trial, Martinez moved for a judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20(a)(1), arguing, *inter alia*, that there was insufficient evidence to support a conviction for stalking. The superior court denied the motion.

¶14        Martinez then testified in his own defense. He testified that he began working out at the Wellness Center when he moved to Kingman in 2017, and that he began receiving massages from Carrie in September 2020. He admitted that he once told Carrie that "she was being a bitch" when she "threatened" to terminate a massage session early, but denied that he blocked the door or otherwise prevented her from leaving the room. When asked if he ever "intended or wanted" to "hurt [Carrie's] feelings," he answered, "Not intentionally," adding that "calling someone a bitch can probably do that." He also denied committing any act of criminal damage, stating, "I've never slashed any tires" and "didn't break any windows." He did not dispute that the cell phone records accurately reflected his movements on the dates of the tire slashing incidents but maintained that he was driving in those locations while working as a rideshare driver. He did not address Carrie's testimony that he habitually "lingered" at the front desk of the Wellness Center while she was at work or that he repeatedly asked to see her outside of work even after she made clear she was not interested.

¶15        The jury convicted Martinez of stalking and acquitted him of the three counts of criminal damage. Following trial, Martinez renewed the Rule 20 motion as to the stalking charge. The superior court again denied the motion. The superior court sentenced Martinez to three years' probation, a condition of which being that he serve 120 days in jail with credit for two days served.

¶16        Martinez timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A).

4

**DISCUSSION**

### I.     Sufficiency of the Evidence

**¶17**          Martinez argues there is insufficient evidence to support his conviction for stalking, asserting that no evidence showed that he knowingly or intentionally engaged in a course of conduct directed at Carrie or that his conduct caused her to reasonably fear for her safety. "There is no evidence that [he] ever threatened [Carrie]," Martinez contends, and no evidence that he ever "interact[ed]" with her "outside of work." At most, he asserts, the evidence shows that he "annoyed" Carrie, not that he stalked her.

**¶18**          When determining the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. West*, 226 Ariz. 559, 562, ¶ 16 (2011) (cleaned up); *see also State v. Arredondo*, 155 Ariz. 314, 316 (1987) ("To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." (citation omitted)). We will reverse only if no substantial evidence supports the conviction. *State v. Pena*, 209 Ariz. 503, 505, ¶ 7 (App. 2005) (citation omitted). "Substantial evidence is such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Sharma*, 216 Ariz. 292, 294, ¶ 7 (App. 2007) (cleaned up). We "consider the evidence in the light most favorable to sustaining the verdicts, and . . . resolve all conflicts of evidence against the defendant." *State v. Girdler*, 138 Ariz. 482, 488 (1983).

**¶19**          The sufficiency of the evidence is tested "against the statutorily required elements of the offense." *State v. Aguirre*, 255 Ariz. 89, 92, ¶ 8 (App. 2023) (quotation omitted). A person commits the offense of "stalking" as charged in this case by "intentionally or knowingly engag[ing] in a course of conduct that is directed toward another person" that "causes the victim to . . . reasonably fear" that he or she "will be physically injured." A.R.S. § 13-2923(A)(1)(b)(i). A "course of conduct" includes, as relevant here, "directly or indirectly, in person . . . or by any other means . . . [m]aintain[ing] visual or physical proximity to a specific person . . . on two or more occasions over a period of time, however short." A.R.S. § 13-2923(D)(1)(a)(i). The term "course of conduct" excludes, however, "constitutionally protected activity or other activity authorized by law." A.R.S. § 13-2923(D)(1)(b).

¶20      The State presented substantial evidence that Martinez intentionally engaged in a course of conduct directed toward Carrie. The "visual or physical proximity" that establishes the requisite "course of conduct," *see* A.R.S. § 13-2923(D)(1)(a)(i), was shown by, *inter alia*, Carrie's testimony (which Martinez never denied) that he repeatedly appeared at the front desk shortly after she arrived for work and then "lingered" there even if he had no massage appointment that day. Cellphone records indicated that Martinez was at the Wellness Center on the day of the first "tire slashing" incident, and that Martinez "circl[ed]" the area of the Wellness Center several times the following day.[1] Carrie further testified that a car resembling Martinez's followed her to Robert's house on February 2, 2021, and drove slowly up and down the street. Cell phone records confirmed that Martinez drove from the area of the Wellness Center to Robert's neighborhood that evening. Although Martinez offered a benign explanation for his conduct – testifying that he was at the locations of the "slashing" incidents while driving for Uber – it is for the jury, and not this Court, to determine the credibility of Martinez's testimony on this point. *See State v. Bustamante*, 229 Ariz. 256, 258, ¶ 5 (App. 2012) ("The credibility of witnesses and the weight given to their testimony are issues for the jury, not the court."). The evidence presented was sufficient to allow a reasonable jury to find that Martinez engaged in a course of conduct by "maintaining visual or physical proximity" to Carrie "on two or more occasions." *See* A.R.S. § 13-2923(D)(1)(a)(i).

¶21      Carrie's fear of physical injury at Martinez's hands is established in part by her testimony that she was "fearful" of him during their professional relationship because of his temper and her observation of him "ball[ing] up his fist[s]" when angry. Further, Carrie testified that she feared that Martinez might harm her after she ended their professional relationship. The credibility of Carrie's testimony, and the reasonableness of her fear of harm, were for the jury to determine. *See State v. Baldenegro*, 188 Ariz. 10, 13 (App. 1996) (defendant convicted of aggravated assault challenged denial of Rule 20 motion based on victim's failure to testify; rejecting defendant's challenge, court held that "a jury could reasonably

---

[1] Martinez argues that the cellphone data "could not be used as proof of any of the elements of stalking" because the jury acquitted him of criminal damage. As the State correctly argues, however, the fact that the jury found Martinez not guilty of damaging Carrie's car "does not mean that [the jury] rejected the cellphone evidence." Indeed, in his testimony Martinez did not dispute that the cellphone records accurately reflect his movements on the dates in question.

infer" from the circumstantial evidence that the victim was "placed in reasonable apprehension of imminent physical injury" (cleaned up)); *see also State v. Fields*, 92 Ariz. 53, 60 (1962) (holding that whether defendant who claimed self-defense "reasonably feared bodily harm to himself" was "for the jury to determine"). Viewed in the light most favorable to sustaining the jury's verdict, the record evidence is sufficient to establish the elements of A.R.S § 13-2923(A)(1)(b)(i).

## II.    Constitutionality of A.R.S. § 13-2923

¶22      Martinez argues his conviction for stalking should be reversed because, he contends, the statute defining the offense, A.R.S. § 13-2923, is unconstitutionally vague and overbroad.

¶23      A statute is unconstitutionally vague if "it does not give persons of ordinary intelligence a reasonable opportunity to learn what it prohibits and does not provide explicit instructions for those who will apply it." *State v. Hernandez*, 250 Ariz. 161, 164, ¶ 11 (App. 2020) (cleaned up). A statute is unconstitutionally overbroad if "it prohibits or deters conduct protected by the First Amendment." *State v. Carrasco*, 201 Ariz. 220, 224, ¶ 14 (App. 2001) (citation omitted). We review the constitutionality of a statute de novo, *State v. George*, 233 Ariz. 400, 402, ¶ 6 (App. 2013) (citation omitted), and presume the challenged statute is constitutional, *State v. Kaiser*, 204 Ariz. 514, 517, ¶ 8 (App. 2003) (citation omitted).

¶24      Noting that the "course of conduct" element of Section 13-2923(A)(1)(b)(i) can be established by evidence that the defendant "[m]aintain[ed] visual or physical proximity to" the victim "on two or more occasions," *see* A.R.S. § 13-2923(D)(1)(a)(i), Martinez argues that the term "proximity" is impermissibly "subjective." "It is highly unlikely," he contends, "that a person of ordinary intelligence would be able to know how 'close' or 'near' they can be to someone without" violating the statute. Further, he contends, he cannot fairly be found to have caused Carrie to "reasonably fear" injury since "[s]he never told [him] that she feared for her safety, nor did she act as though she did."

¶25      In the court below, Martinez challenged A.R.S. § 13-2923 only on grounds of vagueness. That fact alone warrants rejecting the "overbreadth" challenge he raises for the first time on appeal. *See In re Kyle M.*, 200 Ariz. 447, 452, ¶ 25 (App. 2001) (finding constitutional challenge on vagueness and overbreadth grounds waived for failure to raise issue in the trial court).

¶26        In any event, a defendant generally has no standing to challenge a statute on vagueness or overbreadth grounds if his conduct is not constitutionally protected and falls within a statute's legitimate scope. *State v. Brown*, 207 Ariz. 231, 237, ¶ 17 (App. 2004); *see also State v. Musser*, 194 Ariz. 31, 32, ¶ 5 (1999) ("Traditionally, a person to whom a statute may constitutionally be applied does not have standing to challenge that statute simply because it conceivably could be applied unconstitutionally in other cases."). As noted above, substantial evidence was presented from which a reasonable jury could find that Martinez maintained visual or physical proximity to Carrie on multiple occasions and that he caused her to fear physical injury at his hands. Such conduct is not constitutionally protected, and falls within the statute's legitimate scope. *Cf. Brown*, 207 Ariz. at 236, ¶ 14 (holding harassment statute constitutional because it "regulates neither constitutionally protected speech nor expressive conduct"). We therefore agree with the State that Martinez does not have standing to challenge A.R.S. § 13-2923 on grounds of vagueness or overbreadth "because his conduct was not constitutionally protected and fell within the statute's legitimate scope."

¶27        "A narrow exception to the traditional standing rule . . . is recognized in First Amendment cases." *Brown*, 207 Ariz. at 237, ¶ 18 (cleaned up). If a challenged statute "may cause persons not before the Court to refrain from engaging in constitutionally protected speech, then [a defendant] has standing to challenge the statute." *Id*. (cleaned up). This narrow exception only applies, however, "if the statute's deterrent effect on legitimate expression is both real and substantial." *Id*. (cleaned up). And the exception is inapplicable if the statute "'regulates conduct as well as speech.'" *See id*. at 238, ¶ 22 (holding that defendant lacked standing to raise constitutional challenge to harassment statute, the court found "the narrow exception to the standing requirement inapplicable" because the statute "'regulates conduct as well as speech'" (quotation omitted)).

¶28        Martinez identifies no "deterrent effect" that Section 13–2923(A)(1)(b)(i) purportedly has on constitutionally protected speech, and we perceive none. On the contrary, the statute expressly exempts from its scope "constitutionally protected activity or other activity authorized by law." A.R.S. § 13–2923(D)(1)(b). Further, the "narrow exception" to the standing rule does not apply to a statute like A.R.S. § 13-2923 that regulates conduct as well as speech. *See Brown*, 207 Ariz. at 238, ¶ 22. The exception to the standing rule therefore does not apply here. Because Martinez lacks standing to raise his vagueness and overbreadth challenges, we decline to consider them.

## III.    Jury Instructions

**¶29**         Martinez argues that the superior court erred by failing to *sua sponte* instruct the jury on harassment under A.R.S. § 13-2921(A) as a lesser-included offense of stalking. We review de novo whether the superior court properly instructed the jury. *State v. Zaragoza*, 221 Ariz. 49, 53, ¶ 15 (2009).

**¶30**         A trial court must instruct the jury on all requested lesser-included offenses that are supported by the evidence. *State v. Tschilar*, 200 Ariz. 427, 436, ¶ 39 (App. 2001) (citing *State v. Detrich*, 178 Ariz. 380, 383 (1994)); *see* Ariz. R. Crim. P. 21.4(a)(1). But Martinez did not request a harassment instruction at trial, and so must establish fundamental, prejudicial error to obtain relief on appeal. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22 (2005).

**¶31**         To establish fundamental error, a defendant must show that "(1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. Riley*, 248 Ariz. 154, 170, ¶ 24 (2020). To show that an error was fundamental, the defendant must establish that "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). A defendant alleging an error that falls within the first and second categories must also show resulting prejudice; errors falling into the third category are presumed to be prejudicial. *See id.*

**¶32**         A trial court generally has no duty to give an instruction that is not requested by any party. *See*, *e.g.*, *State v. Puffer*, 110 Ariz. 180, 181–82 (1973) (citing case law; "We have repeatedly held that the failure of the appellant to request a specific instruction constituted a waiver of any right to have it given." (citations omitted)). Although another panel of this Court recognized an exception to this principle when reversing a conviction due to the trial court's failure to *sua sponte* instruct the jury on a potentially applicable justification defense, *see State v. Jones*, __ Ariz. __, __, ¶ 28, 559 P.3d 1112, 1122 (App. 2024), nothing in *Jones* indicates that its holding extends to lesser-included offenses as well. Because Martinez did not request an instruction on harassment, the court's failure to give one was not error, much less fundamental error. *See State v. Blankenship*, 99 Ariz. 60, 68 (1965) ("[T]his court has repeatedly held that where a defendant desires special instructions, and has neglected to request same, it constitutes a waiver of any right to such admonition." (citations omitted)).

¶33          Moreover, an instruction on a lesser-included offense is appropriate only if "a rational juror could conclude that the defendant committed . . . the lesser offense" but not the greater one. *State v. Hulsey*, 243 Ariz. 367, 383, ¶ 55 (2018) (citations omitted). An instruction of a lesser-included offense is not warranted, for example, when the defendant denies acting with any criminal intent at all. *See State v. Salazar*, 173 Ariz. 399, 408 (1992) ("When the record is such that [a] defendant is either guilty of the crime charged or not guilty, the trial court should refuse a lesser included instruction." (citation omitted)).

¶34          To convict a defendant of harassment under A.R.S. 13-2921(A),[2] the jury must find, *inter alia*, that the defendant "knowingly and repeatedly" committed an act or acts that harasses another person. "Harass" is defined as "conduct that is directed at a specific person . . . that would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed and the conduct in fact seriously alarms, annoys, humiliates or mentally distresses the person." A.R.S. § 13-2921(E).

¶35          In his trial testimony, Martinez denied that he engaged in any wrongful conduct toward Carrie except for telling her "she was being a bitch" on one occasion. He denied following her on the dates of the "slashing" incidents, claiming his presence at those locations was a coincidence resulting from his work as a rideshare driver. In closing argument, defense counsel maintained that the State's allegation that Martinez was in visual or physical proximity to Carrie over a period of time was based on nothing more than assumptions drawn from "the driving patterns of an Uber driver." Defense counsel acknowledged that Martinez "[e]xpress[ed] romantic interest" in Carrie but asked, "When did expressing romantic interest become a crime?" Likewise, counsel acknowledged Martinez called Carrie a "bitch" on one occasion but argued that while his statement may have been "uncouth," it was "not a crime." Further, counsel argued, "[t]here's no evidence of violence" on Martinez's part, and so "there's no evidence" that Carrie's fear that "he might become violent" was "reasonable." Because Martinez's defense was that, apart from uttering a single "uncouth" word, his conduct was wholly benign, a reasonable jury would either accept the State's evidence and convict Martinez of the charged offense or accept Martinez's defense and find him not guilty of any crime. Under these circumstances, a lesser-included

_____

[2] Section 13-2921(A) contains a number of subsections that identify other ways in which the offense of harassment may be committed. Because Martinez does not address any of these subsections or claim that any of them could apply here, we need not consider them.

offense instruction was neither necessary nor appropriate. *See Salazar*, 173 Ariz. at 408; *see also State v. Caldera*, 141 Ariz. 634, 637 (1984) (noting that if a defendant "produces evidence that he simply did not commit the offense and the state produces evidence that he committed the offense as charged," "there is usually little evidence [in] the record to support an instruction on . . . lesser included offenses." (citation omitted)). Assuming, without deciding, that harassment under A.R.S. 13-2921(A) is a lesser-included offense of stalking under A.R.S. 13-2923(A), the court did not err in failing to *sua sponte* instruct the jury on harassment.

## CONCLUSION

¶36 For the foregoing reasons, we affirm Martinez's conviction.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:     JR