IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

In re the Matter of:

SHELBY ELIZABETH GREGORWICZ, *Petitioner/Appellee*,

*v.*

SEAN VILLA-KENNEDY, *Respondent/Appellant*.

No. 1 CA-CV 25-0510 FC

FILED 06-17-2026

---

Appeal from the Superior Court in Maricopa County
No. FC2025-051499

The Honorable John R. Doody, Judge *Pro Tempore*
The Honorable Hope E. Fruchtman, Judge *Pro Tempore*

**VACATED**

---

COUNSEL

Shelby Elizabeth Gregorwicz
*Petitioner/Appellee*

Sloma Law Group, Phoenix
By Sue A. Jones
*Counsel for Respondent/Appellant*

_____

## OPINION

Judge Veronika Fabian delivered the opinion of the Court, in which Presiding Judge Michael J. Brown and Vice Chief Judge David D. Weinzweig joined.

_____

**F A B I A N**, Judge:

¶1        Sean Villa-Kennedy ("Father") appeals an order of protection obtained against him by Shelby Elizabeth Gregorwicz ("Mother"). The order of protection was based on the superior court's finding that Father's social media post, which disclosed his own HIV status and identified Mother as a former partner, was criminal harassment. Because Father's social media post was protected free speech, this Court vacates the order of protection.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        Mother and Father were at one time in a relationship, which resulted in the birth of their child in 2024.

¶3        In May 2025, Mother posted a message on social media from an account with the name "Shelby Starbuck" to a group of more than 600 members. The post included an image of an HIV negative patch and this text:

> Ordering a bunch of these lmao. Im sure you'd be surprised which of your friends cant wear it, but hey lets be transparent. Be safe out there! If anyone wants one lmk



¶4        Days later, Father posted his own message, using his real name, to the same group, which read:

> It has come to my attention that there is someone in this group that has taken the liberty to share some deeply personal

information with members that shouldn't have been. With that said….

I had a relationship with Shelby Starbuck. And prior to that relationship even becoming a relationship I disclosed with her that I live with HIV. She was informed and aware and made the decision to be in a relationship with me. We obviously had sexual relationship that led to the birth of our daughter. Neither Shelby nor our daughter contracted HIV. Nor has any sexual partners I have had. For Shelby to take it up on herself to use this deeply sensitive and personal information in some way to hurt me should be self evident of her character. Beyond that. I am now forced to put myself out there to combat any further rumors or misinformation being told. I post this here for two reasons. 1 being Mike runs free page and I know this post will not be taken down. 2 this is where most the rumors are being shared. I will be only address[ing] the topic of HIV as any further rumors about me or my relationship with Shelby and our daughter should be none of your concern. And frankly I believe my status should have remained none of your concern as well. But to advocate.

HIV is no longer a death sentence. Millions of people live healthy normal lives with HIV. The current medication available makes it untransmittable. It has become a chronic illness now where it was a terminal illness before. I lead a healthy normal life. I made bad life choices and one of those will forever remind me of actions have consequences. But there are people out there who contract HIV of no fault of their own and the stigma is a real and scary thing. I write this now sitting in the bathroom at work fighting back tears so I can see clearly. I am terrified at the friends and respect I will lose but at the same time I can not idly stand by to be made look bad when it something out of my control and further I do everything to make sure I am healthy and the people I care about are safe.

¶5    After Mother read the post, she texted Father and asked him to remove it. Father refused, explaining his post "was made in response to [Mother's] post," which "started rumors and talk," and to "help educate and . . . try and lessen the stigma."

**¶6**        Mother then filed a petition for an order of protection against Father for herself and their child. She alleged Father's post qualified as domestic violence.

**¶7**        After an *ex parte* hearing, the superior court issued an order of protection under A.R.S. § 13-3601, finding that Father's social media post constituted harassment under A.R.S. § 13-2921. The court held that the First Amendment did not preclude the order of protection because "[d]efamation is not 'protected speech' under the First Amendment." After being served with the order of protection, Father requested a contested evidentiary hearing.  *See* Ariz. R. Protective Ord. P. 38(a).

**¶8**        At the contested hearing, Mother testified about the public nature of Father's post, a pattern of harassment, and "the potential effect" the post could have on her business, personal relationships, and life. She also said she did not disclose Father's status publicly. Father testified he was responding to Mother's post and intended to educate people on HIV. The parties agreed the post was only made once and taken down after the order of protection was served.

**¶9**        After the contested hearing, the superior court continued the order as modified to reflect that Father could not possess a firearm. It found "[Father's] act in posting to an electronic forum to more than 600 people shows repeated acts of harassment which were meant to annoy, harass or intimidate [Mother]." Although the court orally stated the order of protection was based on A.R.S. § 13-2916, the written order of protection did not cite a statutory basis.

**¶10**        Father timely appealed. This Court has jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 2101(A)(5)(b), and Rule 42(a)(2) of the Arizona Rules of Protective Order Procedure. *See Moreno v. Beltran*, 250 Ariz. 379, 382 ¶¶ 11, 13 (App. 2020).

## DISCUSSION

**¶11**        To issue an order of protection, a court must find reasonable cause to believe the defendant may commit an act of domestic violence or has committed an act of violence in the past year. Ariz. R. Protective Ord. P. 23(e)(1); A.R.S. § 13-3602(E). Domestic violence means a criminal "offense prescribed in . . . § 13-2916 [or] 13-2921" in the context of various domestic relationships. A.R.S. § 13-3601(A). In issuing the initial and continued orders of protection, the superior court found that Father's social media post constituted the offense of "harassment" under both A.R.S. §§ 13-2916 and 2921.

**¶12** Father argues that his social media post was protected speech under the state and federal constitutions. This Court reviews constitutional claims and matters of statutory interpretation *de novo*. *Hobson v. Mid–Century Ins. Co.*, 199 Ariz. 525, 528 ¶ 6 (App. 2001). Because the order of protection in this case violates the free speech protection of the federal constitution, no analysis of the Arizona Constitution's broader right to free speech is necessary. *See Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 282 ¶ 47 (2019).

**¶13** If speech or expressive conduct is constitutionally protected, then Arizona harassment statutes do not apply, and an order of protection based on that speech or conduct is improper. *See* A.R.S. § 13-2916(C) ("This section does not apply to . . . Constitutionally protected speech or activity . . . ."); *State v. Brown*, 207 Ariz. 231, 235 ¶ 10 (App. 2004) (A.R.S § 13-2921 "does not apply to pure First Amendment speech and instead regulates, at most, a blend of speech and conduct").

**¶14** Father's social media post was "pure speech" to which the First Amendment provides strong protection. *See Mahanoy Area Sch. Dist. v. Levy ex rel. B.L.*, 594 U.S. 180, 191 (2021) (student's social media post was "pure speech to which, were she an adult, the First Amendment would provide strong protection"); *Brush & Nib Studio, LC*, 247 Ariz. at 284 ¶ 58 ("Pure speech includes written and spoken words, as well as other media such as paintings, music, and film that predominantly serve to express thoughts, emotions, or ideas.") (citation modified).

**¶15** Because Father's social media post was pure speech, the government may not punish his words unless they are within "narrowly limited classes of speech." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942)); *see Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015) (for protected speech, the state may only impose a content-based restriction when the restriction furthers a compelling interest and is narrowly tailored to achieve it). Such speech includes statements intended to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, fighting words, and true threats. *See, e.g., Brandenburg v. Ohio,* 395 U.S. 444 (1969) (per curiam) (incitement); *Miller v. California,* 413 U.S. 15 (1973) (obscenity); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323 (1974) (defamation); *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490 (1949) (speech integral to criminal conduct); *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942) (fighting words); *Watts v. United States,* 394 U.S. 705 (1969) (true threats).

¶16 Mother argues speech that harasses a protected party is one of the classes of speech not protected by the First Amendment. There is, however, no categorical "harassment exception" to the First Amendment. *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001). "Legislatures are free to punish nonspeech conduct, as well as narrow categories of constitutionally unprotected speech, such as true threats. But they cannot label speech that mentally distresses people 'stalking' [or 'harassment'] and then punish all such speech." Eugene Volokh, *Overbroad Injunctions Against Speech*, 45 Harvard Journal of Law and Public Policy 188 (2022). Thus, the order of protection's validity depends on whether Father's post fell within one of the recognized exceptions to constitutionally protected speech.

¶17 In issuing the initial order of protection, the superior court found that the First Amendment was not implicated because Father's post defamed Mother and defamation is not protected speech. To establish defamation, "a publication must be *false* and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 341 (1989) (emphasis added). The superior court cited to *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), to conclude that Father's post was not protected by the First Amendment because it was a statement of opinion implying a false assertion of fact. However, Father's post was neither false nor was it a statement of opinion implying a false assertion of fact. Instead, Father stated the truth – that he had HIV and that Mother and the parties' daughter did not.

## CONCLUSION

¶18 Because Father's post was protected by the First Amendment, the superior court erred in finding it constituted criminal harassment and by issuing an order of protection. Therefore, the order of protection is vacated. Mother's request for sanctions is denied.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR